DAVID R. ZARO (BAR NO. 124334)
TED FATES (BAR NO. 227809)
TIM C. HSU (BAR NO. 279208)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax:  (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        tfates@allenmatkins.com
        thsu@allenmatkins.com

Attorneys for Plaintiff
WILLIAM J. HOFFMAN, Receiver

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| WILLIAM J. HOFFMAN, Court-appointed permanent receiver for Defendant Nationwide Automated Systems, Inc., Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates,<br><br>Plaintiff,<br><br>v.<br><br>BARBARA ADLER,<br><br>Defendant. | Case No. 2:15-cv-5737<br><br>**COMPLAINT FOR FRAUDULENT TRANSFER, UNJUST ENRICHMENT, AND CONSTRUCTIVE TRUST** |

Plaintiff William J. Hoffman of Trigild, Inc. ("Receiver"), the Court-appointed permanent receiver for Nationwide Automated Systems, Inc. ("NASI"), Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"), hereby brings the following Complaint against the above-captioned Defendant and alleges, on behalf of the Receivership Entities, as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. sections 1345 and 1367(a), and the doctrines of ancillary and supplemental jurisdiction, in that this action arises from a common nucleus of operative facts as, and is substantially related to the original claims in, the Securities and Exchange Commission ("Commission") enforcement action styled as *Securities and Exchange Commission v. National Automated Systems, Inc., et al.*, United States District Court, Central District of California, Case No. 14-CV-07249-SJO (FFMx) ("SEC Action").

2. This Court may exercise personal jurisdiction over the above-captioned Defendant pursuant to Federal Rule of Civil Procedure 4(k)(1)(A).

3. Venue in the Central District of California is proper under 28 U.S.C. section 1391 because this action is an ancillary proceeding to the SEC Action and because the Receiver was appointed in this District pursuant to the Preliminary Injunction and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Requiring Accountings; and (4) Appointing a Receiver entered by this Court on October 29, 2014 ("Preliminary Injunction").

## II. PARTIES

4. The Receiver is the duly appointed permanent receiver for the Receivership Entities and was appointed permanent receiver for the Receivership Entities pursuant to the Preliminary Injunction. Among other things, the Preliminary Injunction calls for the Receiver to recover and marshal, for the benefit

of creditors of and investors in the Receivership Entities, any and all assets which were owned, leased, occupied, or otherwise controlled by the Receivership Entities or were otherwise purchased with assets of the Receivership Entities. The Receiver holds exclusive authority and control over the assets of the Receivership Entities, including over the causes of action alleged herein, over which this Court has ancillary and supplemental jurisdiction.

5. On information and belief, Barbara Adler ("Defendant") is a citizen and resident of the County of Los Angeles, California and is the recipient of assets of the Receivership Entities as described further herein.

### III. FACTUAL ALLEGATIONS

**A. The Purported Business of the Receivership Entities and the Commencement of the SEC Action**

6. As alleged by the Commission in the SEC Action, NASI raised money from investors by selling them Automated Teller Machines ("ATMs"), leasing the ATMs back from investors, managing the ATMs for the investors, and paying the investors "rents" that were guaranteed to total at least 20% of the purchase price paid for the ATMs per year. The Receivership entities also paid referral fees to investors and other agents who recruited new investors to purchase ATMs.

7. In actuality, the Receivership Entities did not sell any ATMs to investors, but instead fabricated and sold fictitious ATMs with fabricated serial numbers and locations. The "rents" paid to investors who purchased fictitious ATMs, as well as referral fees paid to investors and agents, were paid from the amounts raised from other investors. Thus, NASI operated a classic Ponzi scheme.

8. On or about September 17, 2014, the Commission initiated the SEC Action against the Receivership Entities and their principals Joel Gillis and Edward Wishner, alleging violations of federal securities laws. The Commission petitioned for the Receiver's appointment, and on September 30, 2014, and October 29, 2014,

this Court entered orders appointing the Receiver, first on a temporary basis and then as permanent receiver for the Receivership Entities.

### B. The Receiver's Authority and Investigation Pursuant to His Appointment

9. Pursuant to the terms of his appointment, the Receiver is vested with exclusive authority and control over the assets of the Receivership Entities. Specifically, Article XII of the Preliminary Injunction and Article VIII of the Freeze Order vests the Receiver with the "full powers of an equity receiver, including, but not limited to . . . full power to sue . . . and take into possession all [receivership] property." (Emphasis added.)

10. The Receiver's investigation to date supports and confirms the Commissions allegations in the SEC Action, including that NASI operated a Ponzi scheme, sold fictitious ATMs to investors and made rent and referral fee payments to investors from funds raised from other investors. Defendants Gillis and Wishner filed answers to the SEC's complaint in which they admit the facts supporting the SEC's Ponzi scheme allegations.

### C. Criminal Indictment and Guilty Pleas

11. On December 16, 2014, Gillis and Wishner were arrested and charged with mail fraud, wire fraud, conspiracy, and aiding and abetting. *United States v. Gillis, et al.*, C.D. Cal. Case No. 14-CR-00712-SJO. Gillis and Wishner waived indictment, surrendered their passports, and were released on bail. On January 13, 2015, and January 21, 2015, respectively, Wishner and Gillis plead guilty to all four counts of the criminal information. In connection with Gillis' guilty plea, a statement of facts signed by Gillis that supports the guilty plea was filed by the government ("Statement of Facts"). As part of his guilty plea, Gillis stated under oath that the facts in the Statement of Facts were true. The Statement of Facts is attached hereto as Exhibit A.

12. The Statement of Facts is fully incorporated herein by reference. The facts stated therein are included in this complaint as though fully restated and alleged herein.

### D. The Fraudulent Transfers to Defendant From the Receivership Entities

13. Attached hereto as Exhibit B is a schedule of bank transfers from Defendant to NASI and from NASI to Defendant. As the schedule reflects, the net amount received by Defendant ("Profit Amount") is calculated by subtracting (a) transfers from NASI to Defendant ("Payments from NASI") from (b) transfers from Defendant to NASI ("Deposit Amount"). Defendant's Profit Amount is $230,714.00.[1]

14. Defendant had no business dealings with NASI apart from transactions relating to the purchase and leasing of fictitious ATMs and provided no services or other value to NASI other than amounts paid for the fictitious ATMs.

### COUNT I – FRAUDULENT TRANSFER

15. The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 14, inclusive, hereinabove set forth.

16. Over the course of its pre-receivership operations, NASI paid the Profit Amount to Defendant with the intent to hinder, delay, or defraud NASI's creditors. Such payments were made from the proceeds of the Ponzi scheme which were generated from investors in the scheme.

17. The Receivership Entities received nothing of value in exchange for the payments that comprise the Profit Amount.

18. At the time the payments comprising the Profit Amount were made to Defendant, NASI was engaged in or about to engage in business transactions for

---

[1] All transfers from Payments from NASI occurring (a) after Defendant received payments equal to the Deposit Amount, and (b) more than seven years prior to the date of filing this Complaint have been excluded from the calculation of the Profit Amount.

1  which its remaining assets were unreasonably small in relation to the business or
2  transaction.
3      19.  NASI was insolvent, or became insolvent, shortly after the subject
4  payments comprising the Profit Amount were made to Defendant.
5      20.  NASI intended to incur, or believed or reasonably should have believed
6  it would incur, debts beyond its ability to pay as they became due.
7      21.  As a consequence, the full Profit Amount is an actual and
8  constructively fraudulent transfer under California's Uniform Fraudulent Transfer
9  Act ("CUFTA"), Cal. Civ. Code § 3439, *et seq.*, and is subject to immediate
10 disgorgement to the Receiver.

## COUNT III – UNJUST ENRICHMENT

12     22.  The Receiver incorporates herein each and every allegation contained
13 in Paragraphs 1 through 21, inclusive, hereinabove set forth.
14     23.  As described above, NASI paid the Profit Amount to Defendant in
15 connection with the Agreement.  Such payments were made from the proceeds of a
16 Ponzi scheme which were generated from investors in the scheme.
17     24.  The Receivership Entities received no value or consideration in
18 exchange for the Profit Amount.
19     25.  Defendant has thus been unjustly enriched in the amount of the Profit
20 Amount, which is subject to immediate disgorgement to the Receiver.

## COUNT IV – CONSTRUCTIVE TRUST

22     26.  The Receiver incorporates herein each and every allegation contained
23 in Paragraphs 1 through 25, inclusive, hereinabove set forth.
24     27.  As described above, Defendant has been unjustly enriched in the
25 amount of the Profit Amount.  The payments comprising the Profit Amount were
26 made from the proceeds of a Ponzi scheme which were generated from investors in
27 the scheme.
28

28. Because Defendant has been unjustly enriched in the amount of the Profit Amount, it holds that amount in constructive trust for the benefit of the Receivership Entities.

29. The Receiver is therefore entitled to a judgment requiring Defendant to immediately turn over the full Profit Amount.

## PRAYER FOR RELIEF

WHEREFORE, the Receiver prays for judgment against the Defendant as follows:

**On Count I:**

(a) For a judgment against Defendant avoiding the transfers from NASI to Defendant comprising the Profit Amount; and

(b) For an order directing Defendant to immediately pay the Profit Amount, plus prejudgment interest and costs, to the Receiver; and

(c) For such other and further relief as the Court may deem proper.

**On Count II:**

(a) For a judgment against Defendant in the amount of the Profit Amount, plus prejudgment interest and costs; and

(b) For an order directing Defendant to immediately pay the Profit Amount, plus prejudgment interest and costs, to the Receiver; and

(c) For such other and further relief as the Court may deem proper.

**On Count III:**

(a) For a judgment against Defendant in the amount of the Profit Amount, plus prejudgment interest and costs; and

(b) For an order declaring Defendant to be holding the Profit Amount, plus prejudgment interest and costs, in constructive trust for the benefit of the Receivership Entities and directing Defendant to immediately turn over the full Profit Amount to the Receiver; and

(c) For such other and further relief as the Court may deem proper.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: July 29, 2015 | ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP |
| 3 | | |
| 4 | | By: /s/ Ted Fates |
| 5 | | TED FATES<br>Attorneys for Plaintiff<br>WILLIAM J. HOFFMAN, Receiver |