DAVID R. ZARO (BAR NO. 124334)
TED FATES (BAR NO. 227809)
TIM C. HSU (BAR NO. 279208)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        tfates@allenmatkins.com
        thsu@allenmatkins.com

Attorneys for Receiver
WILLIAM J. HOFFMAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE AUTOMATED SYSTEMS, INC.; JOEL GILLIS; and EDWARD WISHNER,<br><br>Defendants,<br><br>OASIS STUDIO RENTALS, LLC; OASIS STUDIO RENTALS #2, LLC; and OASIS STUDIO RENTALS #3, LLC<br><br>Relief Defendants. | Case No. CV-14-07249-SJO (FFMx)<br><br>**NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT WITH BARBARA ADLER; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    December 14, 2015<br>Time:    10:00 a.m.<br>Ctrm:    1 - 2nd Floor<br>Judge:   Hon. S. James Otero |

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on December 14, 2015, at 10:00 a.m. in Courtroom 1 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, William J. Hoffman of Trigild, Inc. ("Receiver"), the Court-appointed permanent receiver for Nationwide Automated Systems, Inc. ("NASI"), Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"), will and hereby does move the Court for an order approving a settlement agreement with Barbara Adler ("Motion").

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Aaron J. Kudla, the documents and pleadings already on file in this action, and upon such further oral and documentary evidence as may be presented at the time of the hearing.

**Procedural Requirements:** If you oppose this Motion, you are required to file your written opposition with the Office of the Clerk, United States District Court, 312 North Spring Street, Los Angeles, California 90012 and serve the same on the undersigned no later than 21 calendar days prior to the hearing.

IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on October 29, 2015.

Dated: November 11, 2015

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: */s/ Ted Fates*
TED FATES
Attorneys for Receiver
WILLIAM J. HOFFMAN

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

836067.02/SD

# MEMORANDUM OF POINTS AN AUTHORITIES

## I. BACKGROUND FACTS

On September 17, 2014, the Securities and Exchange Commission ("Commission") filed a complaint against Defendants Nationwide Automated Systems, Inc. ("NASI"), Joel Gillis and Edward Wishner ("SEC Complaint"). The SEC Complaint alleges NASI raised money from investors by selling them Automated Teller Machines ("ATMs"), leasing the ATMs back from investors, managing the ATMs for the investors, and paying the investors "rents" that were guaranteed to total at least 20% of the purchase price paid for the ATMs per year. In actuality, NASI did not sell any ATMs to investors, but instead fabricated and sold fictitious ATMs with fabricated serial numbers and locations. The "rents" paid to investors who purchased fictitious ATMs, as well as referral fees paid to investors and agents, were paid from the amounts raised from other investors.

On September 30, 2014, the Court appointed the Receiver as temporary receiver over NASI, its subsidiaries and affiliates ("Receivership Entities"). Dkt. No. 17. On October 29, 2014, the Court entered a Preliminary Injunction Order, making the Receiver's appointment permanent. Dkt. No. 42. Among other things, the orders "authorize[], empower[] and direct[]" the Receiver to investigate, recover, and marshal for the benefit of creditors and investors of the Receivership Entities any and all assets of the receivership estate.

On March 17, 2015, the Receiver moved for authority to pursue clawback claims against, among others, investors who profited from NASI's investment scheme ("Net Winners"). Dkt. No. 64. The motion ("Clawback Procedures Motion") included a request that the Receiver be authorized to settle clawback claims for 70% of the net profit received by each Net Winner (or 75% if the Net Winner elects to pay in 12 monthly installments). On April 21, 2015, the Court granted the Clawback Procedures Motion. Dkt. No. 72.

In the course of his investigation and accounting, the Receiver learned that Barbara Adler, an investor, received transfers from the Receivership Entities in excess of amounts paid to the Receivership Entities. The net profit amount she received is $230,714 ("Profit Amount"). Declaration of Aaron J. Kudla ("Kudla Decl.") at ¶ 2.

On May 20, 2015, pursuant to the order approving the Clawback Procedures Motion, the Receiver mailed a demand letter to Ms. Adler, stating her Profit Amount and giving her the option to settle the matter without litigation for 70% of her Profit Amount. *Id.* at ¶ 3. The settlement had to be accepted within 60 days of the date of the letter. *Id.* Ms. Adler was unable to accept the settlement offer, so the Receiver advised her of the option to submit a financial hardship application with extensive financial documentation demonstrating her net worth, assets, and income. *Id.* at ¶ 4.

On July 29, 2015, the Receiver filed a complaint asserting claims against Ms. Adler for return of the Profit Amount as representing one or more fraudulent transfers under the California Uniform Fraudulent Transfer Act ("Adler Clawback Action"). Case No. 2:15-cv-5737, Dkt. No. 1.

On or about August 18, 2015, Ms. Adler submitted a Financial Hardship Application and supporting financial documentation ("Financial Hardship Application") to the Receiver, requesting that the Receiver review her financial condition to determine if an exception to the Court-approved settlement parameters was warranted. Kudla Decl. at ¶ 5, Ex. 1. On August 31, due to Ms. Adler's submission of her Financial Hardship Application, the Receiver and Ms. Adler, through their respective counsel, stipulated to extend Ms. Adler's deadline to respond to the Complaint while the Receiver reviewed the Financial Hardship Application and supporting documents. Adler Clawback Action, Dkt. No. 17. The Court approved the stipulation and extended Ms. Adler's deadline to respond to October 24, 2015. Adler Clawback Action, Dkt. No. 18.

The Financial Hardship Application reveals that Ms. Adler's sole monthly income totals $1,980 from social security payments. Kudla Decl. at ¶ 6. Ms. Adler, a 76 year old retired widow, does not receive any employment income or own real property. *Id.* The Financial Hardship Application also reflects that Ms. Adler's monthly expenses total in excess of $3,400 per month. *Id.* Further, the Financial Hardship Application shows that while Ms. Adler has approximately $11,000 in assets, she owes approximately $45,000 in debt, including credit cards, line of credit and personal loan debt. *Id.* Based on the Financial Hardship Application, the Receiver made the determination that Ms. Adler would be unable to satisfy a judgment in the Profit Amount and therefore a reduced settlement outside the Court-approved settlement parameters is reasonable and appropriate given Ms. Adler's extremely limited net worth, income, and assets. *Id.* at ¶ 7.

Accordingly, the Receiver and Ms. Adler negotiated a settlement agreement ("Settlement Agreement"), subject to Court approval, under which Ms. Adler will pay a total of $12,500 to the Receiver - $2,900 to be paid within three days of the Court's approval of the Settlement Agreement and the remaining $9,600 to be paid in 24 equal monthly installments of $400 starting on the first day of the month following the Court's approval. *Id.* at ¶ 8. A copy of the Settlement Agreement is attached to the Kudla Decl. as Exhibit 1.

In the event Ms. Adler defaults under the Settlement Agreement, Ms. Adler has signed a stipulated judgment in favor of the Receiver in the full Profit Amount ("Stipulated Judgment"). Kudla Decl., ¶ 9. The Stipulated Judgment is to be held by the Receiver and not filed or enforced unless and until Ms. Adler defaults on her payments under the Settlement Agreement. *Id.*

Due to the executed Settlement Agreement, on October 30, the Receiver and Ms. Adler, through their respective counsel, stipulated to a second extension of Ms. Adler's deadline to respond to the Complaint. Adler Clawback Action, Dkt. No. 20. The Court approved the stipulation and extended Ms. Adler's deadline to

respond to the Complaint to December 24, 2015. Adler Clawback Action, Dkt. No. 23. The Receiver now requests Court approval of the Settlement Agreement.

## II.   DISCUSSION

A federal equity receiver's power to compromise claims is subject to court approval. As noted by the Ninth Circuit Court of Appeals in *S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986), "[a] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." With regard to settlements entered into by a federal equity receiver, the Court's supervisory role includes reviewing and approving those settlements in light of federal court policy to promote settlements before trial. *See* Fed. R. Civ. P. 16(c), Advisory Committee Notes.

Federal courts of equity often look to bankruptcy law for guidance in the administration of receivership estates. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 745 (9th Cir. 2005); *SEC v. American Capital Investments, Inc.*, 98 F.3d 1133, 1140 (9th Cir. 1996); *SEC v. Basic Energy & Affiliated Resources*, 273 F.3d 657, 665 (6th Cir. 2001); *see also* Local Civil Rule 66-8 ("a receiver shall administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy"). A bankruptcy court may approve a compromise of claims asserted by or against the estate if the compromise is "fair and equitable." *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). The approval of a proposed compromise negotiated by a court-appointed fiduciary "is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interest of the estate nor fair and equitable for the creditors." *In re MGS Marketing*, 111 B.R. 264, 266-67 (B.A.P. 9th Cir. 1990).

The Court has great latitude in approving compromises. In passing on the proposed compromise, the Court should consider the following:

a. The probability of success in litigation;

b. The difficulties, if any, to be encountered in the matter of collection;

c. The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending; and

d. The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Woodson*, 839 F.2d at 620.

Here, the Receiver has weighed the costs and likely benefit of continuing the action against Ms. Adler and enforcing a judgment therefrom. Preparation of a motion for summary judgment would involve considerable expense for the receivership estate. While the Receiver is confident he would prevail, the collectability of a judgment against Ms. Adler is the primary concern.

As stated above, Ms. Adler's monthly income is limited to social security payments totaling $1,980 per month, which does not cover her monthly expenses. Kudla Decl. at ¶ 6. She does not receive any employment income that could be garnished, nor does she own any real property or other assets of significant value that could be levied upon. *Id.* Furthermore, Ms. Adler has a substantial amount of debt. *Id.* Based on the above, it is unlikely the Receiver would be able to collect more than Ms. Adler has agreed to pay via the Settlement Agreement and the expenses of obtaining and enforcing a judgment would likely exceed the recovery by a substantial margin.

The Settlement Agreement generates $12,500 for the receivership estate without further litigation or expense. If Ms. Adler defaults on the payments due under the Settlement Agreement, the Receiver can submit the Stipulated Judgment for entry without further litigation expense. The Receiver believes the Settlement Agreement is in the best interests of the receivership estate, and therefore asks that it be approved. *Id.* at ¶ 10.

It should be noted that Ms. Adler's financial circumstances are truly unique amongst the various Net Winners in this case. The Receiver expects there will be

1 very few, if any, other Net Winners with a net worth, assets, and income as low as
2 hers, combined with her advanced age and minimal earning capacity. Although
3 there may be other Net Winners for whom a reduced settlement is warranted due to
4 their financial condition, very few, if any, other Net Winners will warrant a
5 settlement of such a small amount. *Id.* at ¶ 11.

### III. CONCLUSION

For the foregoing reasons, the Receiver requests an order approving the Settlement Agreement.

Dated: November 11, 2015
ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: */s/ Ted Fates*
TED FATES
Attorneys for Receiver
WILLIAM J. HOFFMAN