DAVID R. ZARO (BAR NO. 124334)
TED FATES (BAR NO. 227809)
TIM C. HSU (BAR NO. 279208)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        tfates@allenmatkins.com
        thsu@allenmatkins.com

Attorneys for Receiver
WILLIAM J. HOFFMAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>        v.<br><br>NATIONWIDE AUTOMATED SYSTEMS, INC.; JOEL GILLIS; and EDWARD WISHNER,<br><br>        Defendants,<br><br>OASIS STUDIO RENTALS, LLC; OASIS STUDIO RENTALS #2, LLC; and OASIS STUDIO RENTALS #3, LLC<br><br>        Relief Defendants. | Case No. CV-14-07249-SJO (FFMx)<br><br>**DECLARATION OF AARON J. KUDLA IN SUPPORT OF THE RECEIVER'S MOTION FOR APPROVAL OF SETTLEMENT WITH BARBARA ADLER**<br><br>Date:    December 14, 2015<br>Time:   10:00 a.m.<br>Ctrm:   1 - 2nd Floor<br>Judge:  Hon. S. James Otero |

I, Aaron J. Kudla, declare:

1.     I am a Certified Public Accountant and attorney at Trigild, Inc., the company of William Hoffman ("Receiver"), the Court-appointed receiver for Defendant Nationwide Automated Systems, Inc. ("NASI"), Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities").  I make this declaration in support of the Receiver's Motion for Approval of Settlement with Barbara Adler.  I have personal knowledge of the facts stated herein, and if called upon to do so, I could and would personally and competently testify to them.

2.     In connection with my review and analysis of business and other records relating to the Receivership Entities, I determined that Barbara Adler, an investor, received transfers from the Receivership Entities in excess of the amount she paid to the Receivership Entities.  Ms. Adler received a net profit of $230,714 ("Profit Amount") from the Receivership Entities.

3.     On or about May 20, 2015, I mailed a demand letter to Ms. Adler on behalf of the Receiver, stating her Profit Amount and giving her the option to settle the matter without litigation for 70% of her Profit Amount.  The settlement had to be accepted within 60 days of the date of the letter.

4.     Ms. Adler was unable to accept the settlement offer within the 60-day deadline, so I advised her, through her counsel, of the option to submit a financial hardship application with extensive financial documentation demonstrating her net worth, assets, and income.

5.     On or about August 18, 2015, Ms. Adler submitted a Financial Hardship Application and supporting financial documentation ("Financial Hardship Application"), requesting that the Receiver review her financial condition to determine if an exception to the Court-approved settlement parameters was warranted.

6.     I reviewed the Financial Hardship Application on behalf of the Receiver.  The Financial Hardship Application reveals that Ms. Adler's sole monthly income totals $1,980 from social security payments.  Ms. Adler, a 76 year old retired widow, does not receive any employment income or own real property.  The Financial Hardship Application also reflects that Ms. Adler's monthly expenses total in excess of $3,400 per month.  Further, the Financial Hardship Application shows that while Ms. Adler has approximately $11,000 in assets, she owes approximately $45,000 in debt, including credit cards, line of credit and personal loan debt.

7.     Based on the Financial Hardship Application, and on behalf of the Receiver, I determined that Ms. Adler would be unable to satisfy a judgment in the Profit Amount and therefore a reduced settlement outside the Court approved settlement parameters is reasonable and appropriate given Ms. Adler's extremely limited net worth, income, and assets.

8.     The Receiver and Ms. Adler, through their respective counsel, negotiated a settlement agreement under which Ms. Adler agrees to pay a total of $12,500 to the Receiver ("Settlement Agreement").  A true and correct copy of the Settlement Agreement is attached hereto as Exhibit 1.  Under the Settlement Agreement, Ms. Adler will pay $2,900 within three days of the Court's approval of the Settlement Agreement.  Ms. Adler will pay the remaining $9,600 in 24 equal monthly installments of $400 starting on the first day of the month following the Court's approval.  Ms. Adler has already delivered a check for $2,900, which we are holding pending Court approval of the Settlement Agreement.

9.     In the event Ms. Adler defaults under the Settlement Agreement, she has signed a stipulated judgment in favor of the Receiver in the full Profit Amount ("Stipulated Judgment").  The Stipulated Judgment is to be held by the Receiver and not filed or enforced unless and until Ms. Adler defaults on her payments under the Settlement Agreement.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

10.     The Receiver believes that the Settlement Agreement is in the best interests of the receivership estate, and therefore requests that it be approved.

11.     Ms. Adler's financial circumstances are truly unique.  Although there may be other individuals who profited from NASI's investment scheme ("Net Winners") for whom a reduced settlement is warranted due to their financial condition, very few, if any, other Net Winners have a net worth, assets, and income as low as hers, combined with her advanced age and minimal earning capacity. Accordingly, very few, if any, other Net Winners will warrant a settlement of such a small amount.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 10TH day of November, 2015, at San Diego, California.

AARON J. KUDLA

# EXHIBIT 1

Exhibit 1
Page 5

## SETTLEMENT & RELEASE AGREEMENT

This SETTLEMENT & RELEASE AGREEMENT ("**Agreement**"), dated as of _____, 2015, is made by and between WILLIAM HOFFMAN of Trigild, Inc. ("**Receiver**"), in his capacity as Court-appointed permanent receiver for NATIONWIDE AUTOMATED SYSTEMS, INC., and its subsidiaries and affiliates, and BARBARA ADLER ("**Transferee**").

## RECITALS

A.      On September 17, 2014, the Securities and Exchange Commission ("**Commission**") filed a Complaint in the United States District Court for the Central District of California ("**District Court**") against Defendants Nationwide Automated Systems, Inc. ("**NASI**"), Joel Gillis and Edward Wishner.  Concurrently with filing the Complaint, the Commission filed an Ex Parte Application for a Temporary Restraining Order ("**TRO**"), including the appointment of a temporary receiver for NASI, its subsidiaries and affiliates ("Receivership Entities").

B.      The District Court granted the Ex Parte Application and entered the TRO on September 30, 2014, including appointment of the Receiver on a temporary basis.  On October 29, 2014, the Court entered a Preliminary Injunction Order, including appointment of the Receiver on a permanent basis.

C.      The Receiver alleges that during the last seven years, Transferee received **$230,714.00** ("**Profit Amount**") from the Receivership Entities in excess of any amounts paid or value provided to the Receivership Entities.  The Receiver has asserted claims against Transferee for return of the Profit Amount as representing one or more fraudulent transfers under the California Uniform Fraudulent Transfer Act.  Transferee has asserted that she does not have the financial ability to repay the Profit Amount and has provided documentation of her personal finances to the Receiver.

D.      The Receiver and Transferee have agreed to settle and resolve all disputes, and release all claims arising from the transfers from the Receivership Entities to Transferee, under the terms and conditions provided herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the covenants and conditions hereinafter contained, and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged the undersigned agree as follows:

1.      <u>Payment.</u>  Transferee shall pay to the Receiver a total of $12,500.  The first payment of $2,900 shall be due to the Receiver within three (3) business days of entry of an order by the District Court approving this Agreement ("**Approval Order**").  The remaining $9,600 shall be paid in 24 equal monthly installments of $400 starting on the first day of the month following entry of the Approval Order.

2.     <u>Stipulated Judgment</u>.  Contemporaneous with the execution of this Agreement, Transferee has signed the Stipulated Judgment for Disgorgement in favor of the Receiver for the full Profit Amount attached hereto as Exhibit A and delivered the same to the Receiver ("**Stipulated Judgment**").  The Receiver shall hold the Stipulated Judgment and not seek to have it entered or enforced against Transferee unless and until Transferee defaults on the payment(s) due pursuant to Section 1 above and fails to cure such default within three business days of being notified of the default by the Receiver or his counsel.  If such default occurs and is not cured within three business days of Transferee receiving notice, the Receiver may, in his sole discretion, take all steps necessary to have the Stipulated Judgment entered and enforced against Transferee by all available means.

3.     <u>Court Approval</u>.  This Agreement and all of its terms and conditions shall be subject to approval by the District Court.  Until an Approval Order is entered, it shall have no force or effect.  The Receiver will promptly seek approval of the Agreement by way of a noticed motion filed with the District Court.

4.     <u>Mutual Release</u>.  On the condition that all payments due under Section 1 above have been fully made and effective only upon satisfaction of such condition, the Receiver, on the one hand, and Transferee on the other hand, and each of them, for themselves, their agents, employees, partners, directors, officers, successors and assigns, forever, irrevocably and unconditionally release and discharge one another, and their respective officers, directors, representatives, heirs, executors, administrators, receivers, successors, assigns, predecessors, agents, attorneys and employees, of and from any and all claims, demands, debts, obligations, liabilities, costs, expenses, rights of action, causes of action, awards and judgments arising from the Transfers, all of which are hereinafter called, "**Released Claims**."

Each of the Receiver and Transferee acknowledges and agrees that the Released Claims may include claims of every nature and kind whatsoever, whether known or unknown, suspected or unsuspected and further acknowledge that they may be presently unknown or unsuspected, and may be based upon hereafter discovered facts different from, or in addition to, those which they now know, or believe to be true.  Nevertheless, the parties agree that the foregoing release shall be and remain effective in all respects, notwithstanding such different or additional facts, or the discovery thereof, and further hereby expressly waive and relinquish any and all rights provided in California Civil Code Section 1542 which provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The Receiver and Transferee expressly waive and release any rights and benefits that they have or may have under any similar law or rule of any other jurisdiction pertaining to the matters released herein.  It is the intention of the parties through this Agreement and with the advice of counsel to fully, finally and forever settle and release the claims and disputes existing between them as provided herein, known or unknown.  The releases herein given shall be and

remain in effect as full and complete releases of all such matters notwithstanding the discovery of any additional claims or facts relating thereto.

5.     <u>Voluntary Signing</u>.  Each of the parties to this Agreement has executed this Agreement without any duress or undue influence.

6.     <u>Independent Counsel</u>.  Each of the parties acknowledge and agree that it has been represented by independent counsel of its own choice throughout all negotiations which preceded the execution of this Agreement, that it has executed and approved of this Agreement after consultation with said counsel, and that it shall not deny the validity of this Agreement on the ground that such party did not have the advice of legal counsel.

7.     <u>Governing Law and Venue</u>.  This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of California, and Federal Equity Receivership law, and subject to the exclusive jurisdiction of the District Court.

8.     <u>Waiver/Amendment</u>.  No breach of any provision of this Agreement can be waived unless in writing.  Waiver of any one breach of any provision of this Agreement is not a waiver of any other breach of the same or of any other provision of this Agreement.  Amendment of this Agreement may be made only by written agreement signed by the parties.

9.     <u>Fax and Counterparts</u>.  This Agreement may be executed by fax and/or in counterparts and, if so executed, each fax and/or counterpart shall have the full force and effect of an original.

10.     <u>Attorneys' Fees and Costs</u>.  The parties hereto shall each bear their own costs and attorneys' fees incurred in connection with the negotiation and documentation of this Agreement, and the parties' efforts to obtain District Court approval thereof.  If any proceeding, action, suit or claim is undertaken to interpret or enforce this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in connection with such dispute.

11.     <u>Notices</u>.  Notices to be provided hereunder shall be effective if sent to the following:

To Transferee:

_____

_____

_____

_____

To the Receiver:

William Hoffman, Receiver
c/o Allen Matkins
501 W. Broadway, 15th Floor

San Diego, CA 92101
Attn:  Ted Fates, Esq.

TRANSFEREE:

By: _Barbara Adler_____
      Barbara Adler


WILLIAM HOFFMAN OF TRIGILD, INC.,
COURT-APPOINTED PERMANENT RECEIVER
FOR NATIONWIDE AUTOMATED SYSTEMS,
INC., AND ITS SUBSIDIARIES AND
AFFILIATES

By: _____
     WILLIAM HOFFMAN, Receiver

# EXHIBIT A

Exhibit 1
Page 10

1 | DAVID R. ZARO (BAR NO. 124334)
2 | TED FATES (BAR NO. 227809)
  | TIM C. HSU (BAR NO. 279208)
3 | ALLEN MATKINS LECK GAMBLE
  |   MALLORY & NATSIS LLP
  | 515 South Figueroa Street, Ninth Floor
4 | Los Angeles, California 90071-3309
  | Phone: (213) 622-5555
5 | Fax: (213) 620-8816
  | dzaro@allenmatkins.com
6 | tfates@allenmatkins.com
  | thsu@allenmatkins.com
7 |
  | Attorneys for Plaintiff
8 | WILLIAM J. HOFFMAN, Receiver

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **WESTERN DIVISION**

12 | WILLIAM J. HOFFMAN, Court-appointed permanent receiver for Defendant Nationwide Automated Systems, Inc., Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates,

Plaintiff,

v.

BARBARA ADLER,

Defendant.

Case No. CV15-05737 SJO (FFMx)

**STIPULATED JUDGMENT OF DISGORGEMENT**

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

835669.01/SD

Exhibit 1
Page 11

## **STIPULATED JUDGMENT OF DISGORGEMENT**

1.      On October 29, 2014, and pursuant to a Preliminary Injunction and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Requiring Accountings; and (4) Appointing a Receiver ("Appointment Order"), entered in the action styled *Securities and Exchange Commission, Plaintiff vs. Nationwide Automated Systems, Inc., Joel Gillis, and Edward Wishner, Defendants, and Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC, Relief Defendants*, United States District Court, Central District of California, Case No. 14-cv-07249-SJO (FFMx) ("SEC Action"), William Hoffman ("Receiver") was appointed as permanent receiver for Defendant Nationwide Automated Systems, Inc. ("NASI") and its subsidiaries and affiliates.  On November 18, 2014, the Court confirmed that Relief Defendants Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC are affiliates of NASI and therefore included in the receivership (collectively with NASI, "Receivership Entities").

2.      Pursuant to the terms of the Appointment Order, the Receiver is charged with, among other things, investigating the activities of the Receivership Entities, gathering and recovering assets of the Receivership Entities, including pursuing claims to recover those assets, as necessary.  Specifically, Section XII of the Appointment Order vests the Receiver with, among other authority, the "full powers of an equity receiver, including, but not limited to, full power over all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other property belonging to, being managed by or in the possession of or control" all property of the Receivership Entities.

3.      The Securities and Exchange Commission has alleged in the SEC Action that Defendants NASI, Gillis, and Wishner operated a Ponzi scheme. Defendants Gillis and Wishner has also been criminally indicted on charges of wire

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

835669.01/SD

Exhibit 1
Page 12

1   fraud and conspiracy and have entered guilty pleas in the criminal case.  After

2   obtaining and analyzing business and other records relating to the Receivership

3   Entities, the Receiver has independently concluded that Defendants operated a Ponzi

4   scheme and that returns paid to investors in NASI were paid not from actual income

5   on investments, but from funds received from later investors.

6          4.      In connection with his review and analysis of business and other records

7   relating to the Receivership Entities, the Receiver determined that BARBARA

8   ADLER ("ADLER") received a total of $230,714.00 in payments from the

9   Receivership Entities in excess of his/her total investment in or other value provided

10  to the Receivership Entities.

11         5.      Based on the conclusions, determinations, and admissions above, the

12  Receiver sent ADLER a disgorgement demand, requesting that ADLER return the

13  amount of $230,714.00 to the receivership estate.

14         6.      ADLER agrees the Receiver is entitled to a judgment of disgorgement

15  in the amount of $230,714.00 and consents to entry of such judgment.

16         **IT IS SO STIPULATED.**

17  Dated:  November 4, 2015            ALLEN MATKINS LECK GAMBLE
                                        MALLORY & NATSIS LLP
18

19                                      By:_____/s/ Ted Fates_____

20                                         TED FATES
                                           Attorneys for Receiver
                                           WILLIAM HOFFMAN
21

22

23  Dated: _____, 2015      By:_____

24                                         BARBARA ADLER

25

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

835669.01/SD                         -2-

Exhibit 1
Page 13

1  fraud and conspiracy and have entered guilty pleas in the criminal case.  After

2  obtaining and analyzing business and other records relating to the Receivership

3  Entities, the Receiver has independently concluded that Defendants operated a Ponzi

4  scheme and that returns paid to investors in NASI were paid not from actual income

5  on investments, but from funds received from later investors.

6      4.    In connection with his review and analysis of business and other records

7  relating to the Receivership Entities, the Receiver determined that BARBARA

8  ADLER ("ADLER") received a total of $230,714.00 in payments from the

9  Receivership Entities in excess of his/her total investment in or other value provided

10  to the Receivership Entities.

11     5.    Based on the conclusions, determinations, and admissions above, the

12  Receiver sent ADLER a disgorgement demand, requesting that ADLER return the

13  amount of $230,714.00 to the receivership estate.

14     6.    ADLER agrees the Receiver is entitled to a judgment of disgorgement

15  in the amount of $230,714.00 and consents to entry of such judgment.

16     **IT IS SO STIPULATED.**

17  Dated: _____, 2015      ALLEN MATKINS LECK GAMBLE
                                        MALLORY & NATSIS LLP
18

19                                      By: _____

20                                          TED FATES
                                            Attorneys for Receiver
                                            WILLIAM HOFFMAN
21

22

23  Dated: 10-29-15 , 2015       By: _Barbara Adler_____

24                                   BARBARA ADLER

25

26

27

28

835605.01/SD                          -2-

Exhibit 1
Page 14